**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

UNITED STATES,                                        CASE NO. 3:23 CV 567

     Plaintiff,

     v.                                              JUDGE JAMES R. KNEPP II

DIESEL SPEC, INC.,

     Defendant.                                      **MEMORANDUM OPINION AND
                                      ORDER**

### INTRODUCTION

Currently pending in this Clean Air Act case brought by the United States against Defendant Diesel Spec, Inc., a company based in Quebec, is Defendant's Motion to Dismiss (Doc. 13) on the grounds that the United States Government cannot enforce the Clean Air Act on a Canadian company. The Government opposed (Doc. 15), and Defendant replied (Doc. 17). For the following reasons, the Court grants in part and denies in part Defendant's motion.

### BACKGROUND

Defendant is a Canadian corporation with a single location in Quebec. (Doc. 13-1, at 7). It sells "high performance engine tuning products and services through independent distributors and performs upgrades on engines and engine parts at its shop in Quebec." *Id.* at 8. In its Complaint, the Government alleges from "at least September 2018 through May 2022", Defendant shipped thousands of these engine tuning products to distributors and customers in the United States, including through at least 10 distributors in Ohio. (Doc. 1, at 17). From September 2018 to May 2019, the Government alleges Defendant exported at least 141 shipments to addresses in Ohio, and that at least 104 of those shipments contained "defeat devices." *Id.* at 18.

"Defeat devices" are aftermarket motor vehicle products that "bypass, defeat, or render inoperative emission controls installed on motor vehicles, motor vehicle engines, nonroad vehicles, and nonroad engines." *Id.* at 1. The Clean Air Act ("CAA"), 42 U.S.C. §7401 *et seq*., establishes emissions standards in the United States for motor vehicles and engines and nonroad vehicles and engines, and it also requires the Environmental Protection Agency ("EPA") to promulgate ambient air quality standards; manufacturers of such vehicles and engines are required to obtain a certificate of conformity from the EPA, which certifies the vehicles and engines conform to those standards. *Id.* at 5-7. Motor and nonroad vehicles and engines in the United States have "emission control systems" composed of software and hardware which control or reduce emissions of pollutants. *Id.* at 10-11.

Defendant sells three aftermarket products which the Government considers defeat devices: (1) EGR blocker plates, which physically bypass diesel engines' exhaust gas recirculation systems; (2) handheld tuners, which upload software to a vehicle's electronic control unit which overrides or deletes emission control software; and (3) "defeat tunes", the software a handheld tuner uploads to the vehicle. *Id.* at 16. Defendant not only sold these devices to distributors and customers in the United States (including in Ohio), but also provided after-sale service and support for its products. *Id.* at 19.

In March 2018, the EPA hand-delivered a request for information to Defendant's general manager, Ian Rees. *Id.* at 20. It requested information on all defeat devices manufactured or sold by Defendant within 30 days. *Id.* at 20-21. Defendant did not respond to the request. *Id.* at 21. On September 24, 2018, EPA representatives met with Defendant at Defendant's facility in Quebec to discuss the request for information and Defendant's lack of response. *Id.* The EPA representatives informed Defendant that a response was mandatory and set a new 30-day deadline;

Defendant agreed to reach out to investigators within one week to provide a response timeline. *Id.* The Government states Defendant has yet to respond to the request. *Id.*

## STANDARD OF REVIEW

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiff, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is to be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

The Government's Complaint asserts five claims against Defendant: (1) violation of the CAA and EPA regulations for sale of EGR blocker plates, (2) violation of the CAA and EPA regulations for sale of handheld tuners, (3) violation of the CAA and EPA regulations for sale of defeat tunes, (4) violation of the CAA and EPA regulations for removing or rendering inoperative emission control systems, and (5) violation of the CAA for failure to respond to the EPA's request for information. (Doc. 1, at 21-29). The Government seeks a permanent injunction against Defendant's sale, offers to sell, or installation of defeat devices, an order requiring Defendant to

respond to the EPA's request for information, and civil penalties. *Id.* at 30. Defendant moves to dismiss and argues the Government seeks to impermissibly make an extraterritorial application of the CAA. *See* Doc. 13-1. For the reasons stated below, the Court denies Defendant's motion as to Counts I through IV and grants it as to Count V.

The Clean Air Act makes it illegal:

> for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser . . .

> [or] for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use[.]

42 U.S.C. § 7522(a)(3)(A) and (B). Each violation of subsection (a)(3)(A) or (B) with respect to an individual vehicle, engine, or part constitutes a separate offense, and each offense is subject to a civil penalty. 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4.

Federal EPA regulations also include provisions which mirror the Clean Air Act text; they make it unlawful to:

> remove or render inoperative any device or element of design installed on or in engines/equipment in compliance with the regulations prior to its sale and delivery to the ultimate purchaser. You also may not knowingly remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser. . . . For a manufacturer or dealer, we may assess a civil penalty up to $44,539 for each engine or piece of equipment in violation. For anyone else, we may assess a civil penalty up to $4,454 for each engine or piece of equipment in violation. . . .

> [or to] knowingly manufacture, sell, offer to sell, or install, any component that bypasses, impairs, defeats, or disables the control of emissions of any regulated

4

pollutant, except as explicitly allowed by the standard-setting part. We may assess
a civil penalty . . . for each component in violation.

40 C.F.R. § 1068.101(b)(1) and (2).

Finally, the Clean Air Act requires "every manufacturer or new motor vehicle or engine
parts or components[] and other persons subject to the requirements" of the emissions standards
to "establish and maintain records . . . [and] make reports and provide information the [EPA] may
reasonably require to determine whether the manufacturer or other person is acting in compliance
with [the CAA] . . . and shall, upon request of an officer or employee duly designated by the [EPA],
permit such officer or employee at reasonable times to have access to and copy such records." 42
U.S.C. 42 § 7542(a). It also prohibits "any person to fail or refuse to permit access to or copying
of records or to fail to make reports or provide information required under section 7542." 42 U.S.C.
§ 7522(a)(2)(A). Violators of this section are also subject to civil penalties. 42 U.S.C. § 7542(a);
40 C.F.R. § 19.4.

Pleading Requirements

Though Defendant briefly argues the Complaint alleges the elements of its claims "in
conclusory fashion" with "no facts explaining exactly how Diesel Spec knew its products were
intended to be used by the independent distributors" as defeat devices (Doc. 13-1, at 8), the Court
finds that on its face, the Complaint alleges its claims in sufficient detail to meet the *Iqbal* and
*Twombly* standard, particularly as the primary function of the devices the Government describes
is to circumvent emission controls (Doc. 1, at 16).

Extraterritorial Application

Defendant's primary argument does not dispute the facts in the Complaint; it instead argues
(1) extraterritorial application of the CAA's provision against defeat devices is improper and (2)
extraterritorial application of its requirement to provide information is improper and also violates

5

Quebec law. (Doc. 13-1, at 5). The Government contends its claims are a domestic, not extraterritorial, application of the CAA. *See* Doc. 15.

*Defeat Device Sales*

Defendant correctly summarizes Counts I, II, and III of the Government's Complaint – for sales of EGR blocker plates, handheld tuners, and defeat tunes, respectively – as claims of violation of 42 U.S.C. § 7522(a)(3)(B), which rest on allegations of Defendant's shipping those products to the United States, and Count IV of the Complaint – for modification of emission control systems by Defendant itself – as a claim of violation of 42 U.S.C. § 7522(a)(3)(A), which rests on allegations of vehicle and engine modification performed by Defendant at its premises in Quebec. (Doc. 13-1, at 9-10).

There is generally a presumption against extraterritoriality. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("It is a 'longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'") (quoting *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)). *Morrison* set a two-step framework for analyzing issues of extraterritoriality. First, the Court determines whether the statute at issue has "a clear, affirmative indication" Congress intended for its extraterritorial application. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). Second, if there is no such indication, the Court determines "whether the case involves a domestic application of the statute . . . by looking to the statute's 'focus.' If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *Id.* A statute's "focus" is "'the object of its solicitude,' which can include the conduct it 'seeks to regulate' as well as the parties and interests

6

it 'seeks to protect' or vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018) (quoting *Morrison*, 561 U.S. at 267).

Defendant argues the CAA contains no affirmative indication Congress meant for it to apply extraterritorially. (Doc. 13-1, at 14). The Government makes no argument in opposition to this point; it argues only that its application of the CAA in this instance is domestic, not extraterritorial. (Doc. 15, at 9). The Court therefore assumes Congress did not intend extraterritorial application of the CAA and moves to the second prong of the *Morrison* inquiry.

Both parties agree the focus of the CAA, specifically of the provisions at issue in this case, is to protect the quality of air in the United States and prevent pollution produced by engines in the United States. (Doc. 13-1, at 12); (Doc. 15, at 10). Defendant argues the conduct relevant to this focus occurred in Canada because its marketing, sales, shipping, and vehicle service all took place from its Quebec location. (Doc. 13-1, at 13). The Government argues the relevant conduct occurred in the United States because Defendant admits its defeat device products were shipped to distributors and individuals in the United States, even if those sales were "instigated" from Canada. (Doc. 15, at 12).

Neither party cites law indicating definitively whether sales of products from another country to the United States are considered to "occur" in the United States or that other country. Defendant relies primarily on the *Morrison* decision, in which the Supreme Court held anti-fraud provisions of the Securities Exchange Act applied only to (1) transactions (from any country) of securities listed on domestic exchanges and (2) domestic transactions of other securities. *Morrison*, 561 U.S. at 266-70. The Court adopted a transaction test of "whether the purchase or sale is made in the United States, or involves a security listed on a domestic exchange." *Id.* at 269-70. Defendant reads this decision to mean that because it sold its products from Canada, the application of the

CAA is extraterritorial. But this Court finds that, in analogy to the *Morrison* facts, because Defendant sold its products to United States distributors and customers, the purchases at issue could just as easily be construed as domestic transactions of "other" products, supporting a reading of application of the CAA in this instance as domestic. The *Morrison* court asked whether the "purchase *or* sale" was made in the United States. *Id.* As alleged in the Government's Complaint, the purchases of Defendant's products were made in the United States. The *Morrison* transaction involved foreign customers buying shares of a foreign bank listed on a foreign securities exchange (e.g., not available for purchase in the United States) – with no connection to the United States. *Id.* In contrast, the case before this Court involves United States customers buying products available in the United States and shipping them to the United States from a Canadian company.

The Government cites a Ninth Circuit case in which a criminal conviction for wire fraud was upheld due to a sufficient "domestic nexus," even though the convicted party conducted that fraud from the United Kingdom. *United States v. Hussain*, 972 F.3d 1138, 1140 (9th Cir. 2020). The focus of the applicable statute, the court determined, was "the use of wires in furtherance of a scheme to defraud, and Hussain used domestic wires to perpetrate his fraud." *Id.* Where a defendant targeted by a particular case is located, the Government argues, is not necessarily where the relevant conduct is considered to have occurred. (Doc. 15, at 13).

This Court finds the Ninth Circuit decision persuasive. The CAA's objective is to prevent pollution in the United States and to protect the country's air quality. The Complaint clearly alleges Defendant sold defeat devices directly to entities and individuals in the United States, where those devices violated CAA requirements while in the United States. *See* Doc. 1. Sales made by Defendant to United States distributors and end users of products then shipped to those individuals and companies in the United States are domestic violations of 42 U.S.C. § 7522(a)(3)(B).

Additionally, the Government specifically alleges Defendant's violations of 42 U.S.C. § 7522(a)(3)(A) occurred via United States customers physically shipping a vehicle's electronic control unit or digitally sending a vehicle's electronic control unit data to Defendant, whose employees would alter the unit or its data, and then ship the unit or send the data back to the United States customer. (Doc. 1, at 28). These transactions, too, were made in the United States by United States customers and involved products which then violated the CAA while in the United States – even if installation of that product occurred in Canada.

In its reply brief, Defendant argues the domestic conduct which violates the CAA in this case was "entirely that of independent domestic distributors and end users, not Diesel Spec itself." (Doc. 16, at 5). The Court is not convinced. That the Government did not sue other parties does not necessarily mean Defendant in this case is not liable. The instant case is not, as Defendant argues, an impermissible domestic application of the law where there is "merely a likelihood of an effect in this country." *Id.* at 4 (citing *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 425-26 (2023). Emissions standards violations were not some downstream effect of Defendant's conduct. As alleged in the Complaint, Defendant willingly conducted business with United States customers to violate those standards in the United States. Indeed, domestic purchases of a foreign product fall squarely into one of the two analogous categories of transactions which the *Morrison* court held would be properly covered by domestic application of law. The Court therefore finds this is a permissible domestic application of the CAA, and the Government has plausibly stated a claim as to Counts I, II, III, and IV of its Complaint.

*Request for Information*

Count V of the Complaint concerns Defendant's lack of response to the Government's request for information pursuant to 42 U.S.C. § 7542(a). The same *Morrison* inquiry applies to this

9

use of a CAA provision. Defendant argues its conduct connected to the statute's purpose "clearly took place in Canada, as the requested records were located in Diesel Spec's Quebec-based headquarters." (Doc. 13-1, at 21).

Again, Defendant argues this provision of the CAA has no indication of intent of extraterritorial application (Doc. 13-1, at 22), and the Government does not oppose this argument. Defendant does not contend this provision regarding requests for information has a more specific focus beyond the CAA's broader focus of preventing air pollution in the United States. The Government argues the focus of this provision "is to compel individuals subject to these Parts of the CAA to provide the information to [the] EPA that it requests to carry out its mission and enforce these provisions of the CAA." (Doc. 15, at 16).

The Government argues that because Defendant "operated a business through which it sold, advertised, and installed thousands of illegal products directly and through its network of [] distributors in the United States," and "the illegal conduct and the harm occurred in the United States[, i]t only stands to reason then that [the] EPA should be able to use the tools that Congress has given it to enforce the CAA." (Doc. 15, at 16-17). As to this claim, the Court is unpersuaded by the Government's argument. The conduct relevant to this provision of the statute's focus was Defendant's recordkeeping and refusal to provide records to the EPA. Even if the products were available in, purchased in, and shipped to the United States, the relevant conduct as to this claim is primarily, as Defendant describes, its record creation and storage at its sole location in Quebec. *See* Doc. 13-1, at 22. The Government expressly alleges it traveled to Canada to seek access to those records. (Doc. 1, at 20-21). The Court finds Defendant's relevant conduct as to this claim took place in Canada, meaning application of 42 U.S.C. § 7542(a) to Defendant would be an

10

impermissible extraterritorial application. The Court therefore grants Defendant's motion to dismiss only as to Count V of the Complaint.

Defendant also argues application of 42 U.S.C. § 7542(a) would violate Canadian law. (Doc. 13-1, at 23). Because the Court finds Count V seeks to impose an impermissible extraterritorial application of this statutory provision, it declines to determine the outcome of a conflict between the CAA and the Canadian law cited by Defendant.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Dismiss (Doc. 13) be, and the same hereby is, GRANTED in part and DENIED in part as set forth herein.

       s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE